CATHERINE MEALLADY *vs.* CITY OF NEW LONDON.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 6th, 1932—decided February 7th, 1933.

*Thomas E. Troland,* for the appellant (defendant).

*Edward G. McKay,* for the appellee (plaintiff).

BANKS, J. The appeal is from the refusal of the trial court to set aside the verdict as contrary to the law and the evidence. It is contended that the jury was not justified in finding (1) that the plaintiff was free from contributory negligence, or (2) that reasonable supervision by the city of its streets and sidewalks would have disclosed the slippery condition complained of by the plaintiff.

The plaintiff's own testimony furnished the only direct evidence as to her conduct at the time she fell. She fell as she was crossing the street. She was wearing a pair of new rubbers and testified that before leaving the sidewalk she saw that it was icy in the street and looked because she wanted a safe place to cross and there was none, "but I thought I could make it." She then started to cross and fell when she took her second step from the sidewalk. Though she knew of the icy condition of the street, she was not guilty of contributory negligence as a matter of law in attempting to pass over it. She was not bound to take another course, but simply to use a degree of care proportioned to the danger involved. *Lucy* v. *Norwich,* 93 Conn.

545, 549, 106 Atl. 762; *Blake* v. *Waterbury,* 105 Conn. 482, 484, 136 Atl. 95. The jury could have found that the plaintiff observed where she stepped and, though she failed to describe with greater particularity the manner in which she was proceeding, it could properly have reached the conclusion that she was in the exercise of reasonable care. *Wood* v. *Danbury,* 72 Conn. 69, 43 Atl. 554; *Schroeder* v. *Hartford,* 104 Conn. 334, 132 Atl. 901.

There was little, if any, dispute as to the location and character of use of the sidewalk and street at the scene of the accident, nor as to the nature and character of the surface of the ground and its slippery condition at the spot where the plaintiff fell. The weather conditions prior to and at the time of the accident were established by the records of the weather bureau. The jury could reasonably have found the following facts: The plaintiff fell at the corner of Bayonet Street and Graham Court, about a mile from the center of the defendant city. Bayonet Street is a residential street running north and south and Graham Court, which is a dead-end street about two hundred feet long, intersects it from the west but does not cross it. Bayonet Street is forty feet wide with a traveled part of macadam thirty-four feet in width, and shoulders of dirt or gravel three feet in width. There are concrete sidewalks on both streets, and at the corner the dirt shoulder slopes down from the sidewalk to the traveled part of Bayonet Street. There is no cross walk at this point. On January 11th, 1931, at about ten-fifteen a. m., the plaintiff approached the corner upon the sidewalk on the north side of Graham Court with the intention of crossing to the east side of Bayonet Street. The sidewalk was clear of ice or snow, but there was a coating of ice on the sloping gravel shoulder of the road. She stepped

from the sidewalk and slipped and fell upon the icy surface of the dirt after taking a step or two. There was a snow storm on December 22d, 23d and 24th, with a fall of seven and seven-tenths inches, another on December 27th with a fall one and six-tenths inches, and one on December 30th with a fall of six-tenths of an inch. It rained from three p.m. on January 5th to three p. m. on January 6th, and the general surface of the ground was clear of snow after January 6th until January 11th, when there was a fall of one-tenth of an inch in the early morning which had melted so that there was no snow on the sidewalk at ten-fifteen a. m. From January 7th to January 11th, both inclusive, the minimum temperature each day was below, and the maximum temperature above, the freezing point. The maximum temperature on January 8th was 46 degrees; on January 9th, 39 degrees, and on January 10th, 42 degrees. The superintendent of streets made a daily inspection of the city streets to see if they were in good condition but had no record of an inspection of Bayonet Street or Graham Court.

A careful reading and analysis of the evidence offered by the plaintiff, considered in the light most favorable to her, discloses that it was insufficient to justify a conclusion that a reasonable supervision by the city of its streets and sidewalks would have revealed the slippery condition complained of by her. It appears that the rainfall of January 5th and 6th had removed the snow which had fallen the last week in December, except for small patches upon the sloping shoulder of the road where snow from the sidewalk had been shoveled. There is no support in the evidence for the statement in plaintiff's brief that there were substantial piles of snow remaining along the walks and upon the cross walks. During the next five

days the temperature was alternately above and below freezing, which would account for the condition described by the plaintiff's sister—that the same ice did not stay upon the gravel, but that it thawed at noon and froze at night. The plaintiff's witnesses testified that the ice upon which she slipped was black and lumpy—a black slippery coating on the dirt or gravel, as one witness described it, apparently taking its color from the dirt beneath it. No witness testified to an icy condition continuously existing for any definite time over any definitely described area and the evidence as to the weather conditions tended to negative the existence of such a condition. The most that it can be said that the evidence tended to prove was that the dirt or gravel at the point where plaintiff fell was slippery at different times. A reasonable supervision of the city's streets and sidewalks would not necessarily have disclosed such a condition. The city is not required to exercise the same degree of care of its cross walks as of a sidewalk. *Ritter* v. *Shelton,* 105 Conn. 447, 135 Atl. 505. The place where the plaintiff fell was not even a cross walk, nor was it upon the traveled portion of the highway. The test is not whether a defect would have been disclosed by an examination of the particular street, but rather whether it would have been disclosed by a reasonable supervision of the streets of the city as a whole. *Ritter* v. *Shelton, supra.* The city is not required to keep its streets and sidewalks in a reasonably safe condition, but it is sufficient if it uses reasonable care to keep them in such condition. The question in such a case is not whether the condition was in fact dangerous, but "whether it has been there long enough and is so conspicuous that it would attract the attention of the city, in the exercise of a reasonable supervision of its streets." *Crotty* v. *Danbury,* 79 Conn. 379, 386,

65 Atl. 147; Petrelli v. New Haven, 116 Conn. 144, 149, 163 Atl. 759. No actual notice was claimed and, upon the evidence as to the condition of the street where plaintiff fell, it could not reasonably be found that it was of such a character or had continued for such a length of time that the city had constructive notice of a defect in the highway at that point. In the absence of notice, either actual or constructive, the city could not be held liable for the plaintiff's injuries.

There is error and a new trial is ordered.

In this opinion the other judges concurred.